THOMAS HAYWOOD & others, *vs*. JOSEPH NASH & others.

April Term, 1873.

TRUST, REFORMING DEED.—Under decree of the supreme court declaring S. C. H. and her children entitled to certain land subject to a specific lien, and ordering a sale to satisfy the lien debt, the land was sold and bought by W., at the amount of the encumbrance, for S. C. H. and her children, and the encumbrance was afterwards paid by N., who had married a daughter of S. C. H., and W. conveyed the land to N., in trust for S. C. H. and her husband, T. C. H., for their joint lives, and the life of the survivor, then for the sole use of a daughter of S. C. H. (who afterwards married N., and the children of a deceased daughter by N.) Upon bill filed by H. and wife and the children, except N.'s wife, against N., his wife and children, it was held that the deed must be reformed so as to vest the property in S. C. H. and all her children, subject to a lien for the money paid by N., which money should be subject to the trusts of the deed to N. *Held*, also, that on a sale of the land to satisfy this lien N. might bid the debt on the land.

*John Reid*, for complainants.

*E. H. East*, for defendants.

THE CHANCELLOR.—Many years ago John Haywood, who is now dead, purchased the tract of land in controversy in this case, and afterwards by deed, founded upon the consideration of natural love and affection, declared himself a trustee for the benefit of his daughter, the complainant Susan C. Haywood and her children, for their support and maintenance, and subsequently by last will and testament devised the land to his executors upon the same trusts. The land was subject to a mortgage to secure the original purchase money, and John Haywood's estate proving insolvent, the mortgage was foreclosed, and, at the foreclosure sale, the land was bought by Enoch Ensley. Afterwards an application was made to said Ensley, on behalf of the said Susan C. and her children, to redeem the land, and, upon Ensley's refusal, a bill was filed in their names against said Ensley, averring that he had purchased as their trustee, and asking that the title be divested out of him, and that an account should be taken of the rents and profits. At the final hearing of this case, a report of which will be found in 8 Hum. 460, under the style of *Haywood* v. *Ensley*, a decree was rendered by the supreme court in favor of the complainants, setting up the trust as claimed, and ordering an account, but the rents proving inadequate to pay the amount due to Ensley, the land was ordered to be sold to satisfy the Ensley debt and costs. On the 14th of July, 1849, the land was sold by the clerk of the supreme court under this decree, and Willoughby Williams became the purchaser at the amount of the debt and costs, and, in compliance with the terms of sale, gave his two notes, of that date, at 10 and 22 months, for $1,217 50 each. John Haywood, a son of Susan C. Haywood and one of the complainants, on the 23d of March, 1850, paid $328 on the first of these notes, taking Williams' receipt, which he afterwards assigned to his mother, and she to Robt. W. Haywood, another son and complainant, and the money called for in said receipt was repaid to the said Robert W. Haywood, by the defendant Joseph Nash, a son-in-law of the said Susan C.

Nash also paid the residue of the first note, and the whole of the last note.

On the 16th of March, 1852, the whole of the purchase money having then been paid, the clerk of the supreme court conveyed the land to Willoughby Williams by deed in fee simple in the usual form, and this deed was duly registered the same month. Afterwards, according to Williams' deposition, but by deed on its face bearing the date of 10th of March, 1852, and proved and registered on the 17th of September 1852, the said Willoughby Williams conveyed the said land on the recited consideration of five dollars and " the further consideration of the love and affection borne by the said Willoughby Williams to Mrs. Susan C. Haywood, wife of Thomas Haywood Esq., and her children," to the said Joseph Nash, " upon the following trusts." The deed then recites the fact of the sale by the clerk and the conveyance to Williams and adds : " And the said Susan C. Haywood being the aunt of the said Willoughby Williams, and in very destitute circumstances, and he being desirous to provide for his aunt a home for life, and after her death and that of her husband, to make some provision for her daughter Elizabeth Haywood, and for the two minor children of Martha Edwards Haywood, deceased, who was also a daughter of the said Susan C. Haywood, and wife of the said Joseph Nash, (the names of the two minor children being Emma Nash and Susan Haywood Nash, and they are the grand children of the said Susan C. Haywood)." The trusts are, in substance, that the said Joseph Nash is to hold the same for the said Susan C. Haywood and her husband Thomas Haywood for their joint lives, and the life of the survivor, and after the death of the survivor, for the sole and separate use of the said Elizabeth Haywood, Emma Nash and Susan Haywood Nash, and should either die without a child, then the share of the one so dying is to go to the survivors or survivor. The deed further clothes the trustee with certain powers not necessary to be detailed.

Joseph Nash afterwards intermarried with Elizabeth Haywood and had one child, Joseph Nash, Jr.

The bill was filed on the 22d of March, 1866, by Thomas Haywood and Susan C., his wife, and their children John Haywood, Clarinda Haywood, Willoughby Haywood, Mary Haywood, James G. Haywood and Robert W. Haywood, against Joseph Nash and Elizabeth his wife, Joseph Nash, Jr., Emma Nash, and Susan Nash, and Willoughby Williams, to set aside the deed from Williams to Nash, and to have the land held upon the like trusts as declared in the deed of the said John Haywood "after the said Williams and the said Nash shall be paid all the money they may be entitled to." That Nash be compelled to account for rents and profits received and enjoyed by him, and for timber cut down and used. The bill alleges, and the fact seems to be conceded, that the children of Susan C. were all minors at the date of the deed to Nash.

The answer of Nash admits the facts as herein before recited and expresses a willingness, so far as he is concerned, that the relief sought may be granted upon repayment of the money due him. He speaks in this regard only for himself, not as trustee, not wishing to prejudice the interest of the beneficiaries. He was himself at New Orleans when Williams purchased the land, and had nothing to do with any contract made with him, if any were made.

The other Nash defendants, all of whom are under disability, answer by next friend, and guardian *ad litem*, and insist upon the validity of the deed of trust.

The bill is taken for confessed against Willoughby Williams, who also gives his deposition. His evidence is clear that, at the instance of his mother, who was a sister of Susan C. Haywood, and of Thomas Haywood, the husband of the said Susan C., he agreed to buy the land, not for himself, but "for them," if they would meet the payments, and he did bid off the land accordingly. He never had any other intention than to give them the benefit of the land after the debt contracted by him for its purchase was paid. What he means by the indefinite words, "them" and "they" is clearly brought out in his answers to the 8th question. After

he was paid, either by the family or by a resale of part of the land, the " balance was to go to Haywood and his family." But he adds :   " In all my conversations, I left out of view the family on account of my intense anxiety for Haywood and his wife."

The witness proves that after Nash had paid all the purchase-money, he desired him to make a conveyance of land, and he, the witness, directed Nash to call upon Thomas Washington, Esq., an eminent lawyer of the Nashville bar, who had been the counsel of the complainants in the suit with Ensley, and who was an intimate and warm friend of the family, and to draw up a proper deed, adding, that he would execute any deed which Mr. Washington would draw up. The deed in controversy was, thereupon drawn up by Mr. Washington, and executed by the witness.

The beneficial title to the land being in Susan C. Haywood and her children at the day of the sale to Williams, and Williams having only-bought it and taken title to secure himself for any actual outlay, and not now setting up any adverse interest, it is clear that the complainants are entitled to the relief sought as against him.   This would be so if the contract or understanding had remained in parol.   But the deed to Nash expressly recites that it is made in consideration of love and affection for Mrs. Susan C. Haywood and her children.   This is a written acknowledgment, at the time, of the character of Williams' holding, and being on the face of the deed to Nash, is notice to all parties claiming under it.   The memory of the witness might be at fault after such a lapse of time, but the contemporaneous written instrument is conclusive on all parties.

This being so, Susan C. Haywood and her children could not, of course, be deprived of their interest in the land without their consent.   She, however, was a married woman, and her children, the complainants, all minors, and could give no consent which would be legally binding upon them. Neither Thos. Haywood, the husband, nor Willoughby Williams, in whom was the naked legal title, could bind them.

They did not join in the deed, and their interests, therefore, remained in them, and so remain to this day.

I have not the least doubt, from the high character of Mr. Washington, as well as from the direct proof in the record, that the deed to Nash was drawn up after consultation with Thomas Haywood certainly, and probably with Susan C. Haywood, and, it may be, though of this there is no proof, with the elder children of the complainants. But the fact that the mother was a married woman, and the children minors, would have rendered a formal assent nugatory, and *a fortiori*, a supposed acquiesence in the action of the head of the family. And mere lapse of time, under the circumstances, both Thos. Haywood and his wife being still alive at the filing of the bill, cannot be held to prejudice the complainants.

The defendant Joseph Nash having assented to the deed, and accepted its trust, cannot, of course, be heard to dispute the validity of the conveyance to him to the extent of the interest acquired by the payment of the notes of Williams. His wife and children, as beneficiaries in the trust deed, are entitled to a lien on the land for the amount thus paid with interest, and the land to the extent of this lien, and the proceeds thereof when sold, will be held subject to the trusts of the deed. Emma Nash and Susan Haywood Nash, or the latter alone, her sister having recently died, are entitled, in right of their mother to a child's part of the residue of the land. For, it is clear that under the deed of John Haywood, the children of Susan C. Haywood took vested and transmissible interests in the land subject to the life interest of the mother. *Bowers* v. *Bowers*, 4 Heisk. 293. These shares, unless it shall be shown to the court that their interest requires a different ruling, will be declared to be subject to the provisions of the trust in the deed to Nash, made for their benefit.

The trust deed to Nash will be allowed to stand, therefore, to the extent of the interest of his wife and children, beneficiaries as aforesaid, and will only be set aside so far as the

complainants are concerned in other respects. The land will be sold in order to repay the amount of the Williams notes with interest, a calculation of which can be readily made. At the sale, the bidding will be started at the amount of the debt then due for the benefit of the wife and children of Nash, beneficiaries in the trust as aforesaid. The surplus will be held for the benefit of Susan C. Haywood and her children in accordance with the trusts of John Haywood's deed as hereinbefore construed, the share of Susan Haywood Nash being also subject to the trusts of the deed to Nash as hereinbefore declared, so far as those trusts relate to them.

The costs of the cause will be paid out of the net rents in the hands of the receiver if sufficient, and, if not, any deficiency will be borne equally by the complainants.

The claim set up in the bill to hold Nash responsible for rents and profits received and enjoyed by him, and for waste, is devoid of equity, and cannot be entertained. There is nothing to show that he has received anything of which the family have not had the benefit, and to order an account would be a useless expense.